Good morning. May it please the Court, Jonathan Libby appearing on behalf of Appellant Juan Pablo Price. Your Honors, before I get to the suppression issues, I'd like to first address the requirements of the statute that Mr. Price was convicted of violating. Specifically, that the law requires, as we read it, not only that Mr. Price knew he was engaging in sexual contact with another person, but also that he knew the sexual contact was without that other person's permission. We believe that's the only reasonable reading, especially in light of multiple Supreme Court precedents, particularly Flores-Figueroa, which makes clear that where in a phrase in a criminal statute that introduces the elements of a crime with the word knowingly, it applies to every element of that offense. And that would be the case here. This is not a very complicated provision in the statute. The language is simply knowingly engages in sexual contact with another person without that other person's permission. It would seem odd that the knowingly would not apply to that other person's permission. You'd have to word that very strangely to add an additional knowingly there. Just as a matter of normal English grammar, it would not make sense to add that additional language, which is what Flores-Figueroa talked about relying on other cases, such as excitement video, liberata, and the like. In addition. But what, did the district court refuse to give that instruction? That is correct, Your Honor. We had asked that the court instruct the jury that they have to establish both that the defendant knew he was engaging in sexual contact with the other person and knew that he did not have that other person's permission. Essentially, what the court instructed the jury here was that it had to prove that the defendant knew he was engaging in sexual contact, which there was no dispute about, and then merely the defendant had to indicate it was without her permission. The victim had to indicate it was without her permission, which is, of course, essentially that creates an automatic, it essentially forces the jury to find in favor of the government on that issue. Why isn't it an objective test as to whether there was consent? Because it applies specifically to without that other person's permission. It's not without a person's permission. I mean, nobody would ever be guilty. They just always say, oh, well, I thought there was consent. Oh, well, I thought she liked it. Your Honor, obviously the jury will have to look at all of the circumstances of the case to determine if, in fact, that's true. In other cases, the couple other circuit cases that have dealt with this situation, they generally, they have punted on the specific legal question here, because they said, regardless, it clearly was, based on the evidence presented, clear that the defendant did not have the other person's permission. Why isn't it just obvious that you don't go and sexually assault a stranger on an airplane sitting next to you? Well, that certainly would be wrong, Your Honor. Wouldn't that be the presumption that you don't do that? Well, yes, Your Honor, but, of course, that's the question, isn't it? The question is, was he, in fact, assaulting the person, or was it a consensual act? And that's what we had to determine here. What was his testimony as to how this came about? His testimony was that he awoke to feel her hand rubbing up against his hand. They then grasped hands, started to, he started to massage her hand, and that led to additional massaging of other parts of her body. Now, if you had had the instruction you asked for, would it then come down to a credibility determination by the jury? Absolutely, Your Honor. And if he said, I didn't have, if he said, told his story, and they didn't believe it, and they believed her story, he would then be convicted? That's correct. With the instruction you had asked for. Well, presumably, Your Honor. Again, what matters is whether or not he knew he lacked the consent. And that's up to the jury to decide whether they believed that he knew or didn't know. Correct. But without giving that instruction to the jury, the jury was permitted to convict him merely based on the purported victim's testimony that she, in fact, had not given permission. So notwithstanding the fact that he believed he was engaging in a consensual act, the mere fact, under the jury instructions, the mere fact that she said that it was not consensual would be enough to convict him. And our position is, you know, sex on a plane, while many might find that offensive, is not itself a criminal act. Right? So if, in fact, the parties were engaging in a consensual act, and it may, in fact, have started off consensually, and at one point she may have decided she didn't want to go forward, and those were all things that the jury certainly could consider. But the question is whether he knew he did not have the permission, and that's what the jury was not instructed. So now turning to the suppression issues. Your Honor, it's our position that Mr. Price was arrested the moment he exited the airplane. He was immediately placed in handcuffs. Well, first, let's take a step back. The plane landed at a remote gate. Okay? So already a decision had been made to separate the plane and Mr. Price from the rest of the airport. Okay? So then it landed at this remote gate. Is that in the record? Because I've done international flights from LAX before, and my personal experience is generally you're carted out on a bus to a remote gate and carted back in when you land. And I'm just wondering if that was in the record, that it was purposeful to be away from the Central International Terminal? No, Your Honor. The record is not entirely clear on that point. Okay. Because that's just this remote gate part to me has no influence either way because that's generally what they do in my experience. Fair enough, Your Honor. But beyond that, once it landed and once the airplane door opened, police agents entered the plane and immediately took Mr. Price and led him off the plane, at which point he was immediately placed in handcuffs. Behind his back. He was patted down just before that. He was separated from his property, and he was then forced to stand at times or sit at times in the area where passengers were disembarking for between an hour and an hour and a half, right? And the only reason given by the police for why he was forced to be there and why a police officer was standing there was because he wasn't free to leave. And the fact is, based on the facts in this case, it's pretty clear he was not free to leave from the moment he was taken off the plane. You don't think there was probable cause to arrest him either, do you? Not at that time, Your Honor. All that we knew at that point when he was removed from the plane is that there had been a communication from the plane, we need LAX police to meet airplane, we have a molester filer on board, which doesn't exactly explain anything about what was actually happening on board or whether Mr. Price was involved in that in any way. And then once it landed and the door opened, the flight purser, the lead flight attendant, met the police who indicated only, quote, female passenger had complained about being touched by a male passenger. Again, that's all it said, and we would submit that on its own. And that certainly is not enough to establish probable cause that Mr. Price had engaged in any other way. Tell us what you think the police should have done that would have avoided it being an arrest and or avoid probable cause question. They could have certainly detained him on the plane, perhaps, along with the other witnesses, the purported victim, and then allowed everybody to disembark and then engage in investigation questioning of both sides. They didn't have to decide to immediately handcuff him and remove him from the plane. They certainly could have done a lot short of that. And they certainly didn't need to then keep him in handcuffs for between an hour and an hour and a half before he was then transported to Customs and Border Protection, which was about 10 minutes away, still in handcuffs. And then once he arrived at Customs and Border Protection, put him in handcuffs and to a bench for, again, more than an hour before he was then actually brought in to be questioned. Did the government use any statements made during that period of time that he was handcuffed in their case? Any direct statements? No. Statements, anything. What they did, they were able to use a written statement that they located in his luggage. His note. Right. And that luggage, of course, had been separated from him as part of this, what we contend, was an arrest. So, in fact, they did, in fact, have the opportunity to use that information. Of course, they would have inevitably found that anyway, probably, wouldn't they? Not necessarily, Your Honor. I mean, even if one is searching someone's bag as they land at the airport, they don't typically read every piece of paper that's inside a bag, but that's essentially what was done here. They took this piece of paper that he had written that was in the bag. Well, but, I mean, he was eventually arrested, I guess. And you don't dispute there was probable cause at the point they interrogated him? At the point that they began the questioning, it does appear that there was probable cause to arrest him for something. Right. It wasn't clear what at that point. Right. Yes. At that point. But, again, we contend that based on the circumstances as a whole, he would not have felt that he was free to leave after he had been, after he had left the flight and had been handcuffed behind his back and separated from his bags. And, again, it was. . . What do you contend is the consequence of that? Let's assume we agree with you that he was arrested without probable cause. But then he was, did sign a Miranda warning and then talked with the FBI agent. He did, and we've challenged that as well, Your Honor, as if one goes back and listens to the recording of the interview and the signing of the Miranda warning, it's not clear that, in fact, Mr. Price understood his Miranda rights and the FBI agent didn't do a very good job of then explaining what those rights were beyond merely reading the Miranda rights themselves. Mr. Price was questioning, kept questioning, I'm sorry, so am I under arrest? Am I under arrest? He's like, oh, it's just like on TV. Don't worry about it. Well, but am I under arrest? Well, we're required to do this two-step process and then try to explain why he had to Mirandize him, which was rather confusing. It was confusing to me, and I understand what the law is. And so clearly it would have been confusing for Mr. Price. And so our contention is the Miranda warning was not, in fact, voluntarily made, but even if it was, the statements themselves as a whole were not voluntarily made based on the discussions he was having with the agent. And with that, I would reserve the balance of my time. Thank you. Good morning, Your Honors, and may it please the Court. Chris Kendall on behalf of the United States. After the defendant sexually abused the victim in this case, he wrote her a note, saying if a man touches you and you don't want him to, always feel free to say no. That was his argument then, and throughout the brief the defendant filed in this case. Which issue are you discussing now? The knowingly issue, Your Honor. The knowingly issue. And are you saying it doesn't have to be knowingly? Yes, Your Honor, the government's arguing. Well, what does his note have to do with that? Well, Your Honor, what he says is. . . I'm trying to find out what. . . You know, there are several issues here, but one is whether it is required to be knowingly. Yes, Your Honor. And you say it is not. Yes, Your Honor. And there are four sections in the code going 2241, 2242, 2243, and 2244, all dealing with similar problems. And two of them say it doesn't have to be knowingly, and two do not say that. Yes, Your Honor. Well, with respect to the age issue in the other statute. What? With respect to the age issue. You're talking about another statute. No, but they're all about similar crimes, and they're all about knowingly engages in a sexual act with another person. Two of them, they say the government need not prove that the government knew the other person had not reached that age. Yes, Your Honor. Two of them do not say anything about the government need not prove knowingly. You don't think when Congress said two out of the four, the government doesn't have to prove that the defendant knowingly knew the condition? Two of them don't say that? No. That's pretty good evidence that Congress knew how to say that the knowing doesn't apply to every element? Your Honor, if we actually look at the legislative history here, the purpose of the Act was to modernize and reform federal rape statutes, and it said the focus of the trial was on the conduct of the defendant, not the measure of the conduct. Now, with respect to knowledge, nothing in the House report that is relevant in this case says that knowingly applied to every word. Importantly, and this is discussed. You have to put it in the congressional report? Your Honor, if I may. Importantly, if we look at the dissenting opinion in the Brugere case, the 8th Circuit case cited by the defendant, the dissent in that case actually goes through the legislative history and what the government believes and reaches the accurate conclusion. But the majority held against you, didn't they? If the majority in a non-binding case from out of district in a 6-5 decision ruled against the government in that case, government today would argue that that case was wrongly decided. Nevertheless, I think that within the dissenting opinion, there's a lot of useful information. One of those useful pieces of information is that the statute in that case, 2242, which is another one of the statutes among the four, originally contained language which would have criminalized someone who is knowingly engaging in a sexual act with another person. Then it said, quote, if such other person is known by the offender to be, and then a bunch of ways someone can be incapacitated. Then two years later, upon the actual passage of that act, the known by the offender to be was deleted. So if anything, Congress explicitly removed that requirement from 2242. Fortunately, 2244 doesn't actually have similar language one way or the other, but 2242 is certainly the closest to 2244B among all of the crimes within the statute. Importantly, also, I think it's worth mentioning that there is a unique nature to sex crimes. In particular, if we look at the excitement video case, in that case, there was this concept of a risk of error with respecting whether or not a producer or viewer knows that a child is really a child within child pornography. In that case, the court stated that in production cases, the risk of error should fall on the producers because they are in the best position to know the age of the victim. Likewise, here, when someone like the defendant has his hands down some stranger's pants on a plane, he is in the best position to know whether or not there is consent. What I want to get back to, though, is, in order to prove this case beyond a reasonable doubt, the government had to show that the defendant did not have permission to touch the victim. And permission in this case was defined, and this was the defendant's instruction, that permission could be expressed or implied. Expressed permission is obviously verbal permission, and the instruction was that implied permission means permission that can be implied from words or actions. Now, here, the jury, upon reaching its verdict, found that there was no permission, and therefore necessarily concluded that no one could have... They didn't find that he knew there was no permission. What they found was that he could not infer from words or actions that there was permission, and I would submit to the court that knowledge is really just inferences. That's what we're learning from the world around us. Knowledge is based on these inferences. And so if he could not have... You don't agree there's a difference between saying you have to know that you don't have permission and from saying it doesn't matter whether you know you have permission? You could be right. There might be reason, clear reason, to show that a defendant does know he has no permission. But if that's not a required element, then we go to a different question of prejudice. I think what Judge Wardlaw was asking earlier about whether or not there should be an objective standard, I believe that is not only what makes sense here but what Congress would have intended. Well, what did Congress say? It said what it said about the others, that you don't have to know the age. You can make the same argument with that. Whether you look at somebody, you should be able to tell that person they're under 16. But that's not what Congress said there. They said for that case, you don't have to know. And two cases, two of the four statutes, they said the government doesn't have to show that the defendant knew. That he had to have knowledge. And two of the cases, they didn't eliminate the knowledge. Your Honor, age is one thing. I think permission is something else. So permission is something that someone, as they were instructed in this case, can infer from words and actions. Yes, but then why didn't the government say that? I mean, why didn't Congress say it? When they say you don't have to have knowledge of certain elements, they say it. They could easily have said that. In fact, we have some state statutes that might well comply with what you're saying. A statute could say unless you have affirmative permission. But this isn't that statute. This is a federal statute. Yes, Your Honor. Here, however, though, where the defendant is able to make the argument of implied permission, that he's inferring from words or actions that there is permission, that is the same argument as that he knows whether or not there is permission. It really gets down to an objective person's standard, which is whether or not a reasonable person would infer. Well, but generally in criminal law, don't you have to show mens rea? Well, there already are two mens rea built into this statute. There's the mens rea of knowingly engaging in the sexual contact, as well as the specific intent of gratifying his own sexual desires. In addition to that, though, the jury still has to find that it was objectively nonconsensual. So it's not as if defendants are going to be convicted left and right here. It's up to the jury to determine based on her statements, based on his statements, based on all of the facts in the case, whether or not there was objectively permission. And that makes sense because as a society, we don't want, as Judge Wardlaw was talking about earlier, people just to be able to get up on the stand and say, oh, I didn't know. I mean, it's just what makes this case a little odd just on its facts is you would think if she truly didn't want the contact, which you sort of would infer from the fact she ended up complaining about it, but she would have screamed or hollered or pushed him away, and she didn't do any of those things. And we addressed that issue below. So I described her as a deer in the headlights during closing argument. We talked about how people are frightened. There's actually a concept known as, I believe it's tonic immobility, where people are frozen and they don't know how to respond. And the jury heard all this evidence and still found him guilty here. Now, saying that she should have had to put up some amount of resistance was also something that was explicitly rejected by Congress. So, you know, for millennia, I think, there was this notion of utmost resistance, that a victim had to put up some resistance in order to prevail in these cases. And in the House report, and it's page 7, note 12, the House explicitly rejected this notion of utmost resistance, instead focusing the inquiry on the conduct of the defendant, not whether or not the victim did anything. I would further say that the fact that here the victim did not say anything, did not touch him back, she did not in any way reciprocate what he was doing. Well, that's what you say. He says she did. Well, he says that initially he touched her hand and she touched him back. Now, I will submit to you this is in an economy class on a plane 35,000 feet in the air with a shared armrest. So the notion that their hands could have bumped is hardly odd. But I think also we should look at the defendant's statements here. So to Special Agent Gates, he made several key admissions. He admitted that touching a complete stranger's breasts and vagina on an airplane was not a normal thing to do in a public place. He described their whole interaction as very impersonal, with no eye contact. He said that when he's doing something like this that is out of limits or against her conscience, he's not looking to make eye contact with someone. He agreed it's his job not to touch her without her permission. And most importantly, he said, and this is a quote, that he knew it was wrong to be engaging like this with someone who's a total stranger without having first had a proper conversation. Well, that's right. It may be wrong and they may not be criminals. Well, he's already saying that. He was right. He shouldn't have done that. It was wrong to do it. There's no question about it. Even if she had made the advance to him, it would have been wrong. I mean, he knows it's wrong. That's not the same as knowing it's a crime. Your Honor, when he's saying that he knows it's wrong to touch, to be engaging like this with someone. Not much of this has to do with whether it's an element of the offense of which he must have knowledge. Well, Your Honor, I just do not think that it either makes sense for that to be the rule or that that is what Congress decided, that knowingly has to spread throughout. There are many reasons. Every Eighth Circuit dissent, by the way, relied on the fact that there are dashes between knowingly and if that other person is. Why the dissent relied, based its decision on the difference between the dashes in 2242 and the non-dashes in the other, it's hard for me to understand. But it was a minority. And as you say, you disagree with the decision. Yes, Your Honor. I would also just like to highlight a few more facts on this or aspects of this issue before I quickly move on to. You've only got two minutes left. Yes, I'll talk very quickly, Your Honor. I would just compare this case to the Cohen case, which is in the brief, in which the facts are very similar. And in that case, the court found that no reasonable person would infer under those circumstances that Cohen had the permission of the stranger beside him to move his hand up her thigh to her groin. The reason that's relevant is that the no reasonable person would infer, that's in the context of whether or not there was knowledge. That was the issue in that case, was whether or not there was knowledge. So that was a test that they were using there. I would also just highlight that in terms of the structural issues of the statute, this case is distinguishable from Flores-Figueroa for many grammatical reasons that are laid out in the brief, most notably that the phrase at issue is an adverbial prepositional phrase as opposed to an adjective prepositional phrase. But rather than get in a whole grammar discussion, I'll move on to the motion. Senator, why don't we give you another two minutes, and why don't you get to your other issue? Yes, Your Honor. So first, with respect to the arrest, the government at trial did not use any of the statements that he made to any officers at the remote gate. He at some point is arrested. It sounds like the defendant admits he was arrested by the time that he was interviewed. By that point, they found a note in his bag that he had written to her where he essentially admits that conduct happened that was suspect. Once they arrived at the gate, we had the message from the pilot saying that there was a molester-slash-fondler on board, and the purser came out and not only said that this touching happened, he also directed CBP, who are the only people who are allowed to go on a plane and why LAXPD couldn't have gone on there, but directed them to the defendant and the victim. So he actually identified the people. That purser also had spoken to both of them and had already, I think, made some credibility determinations within himself. They brought him outside the plane. The purser made a credibility determination? Yes. Like anyone, he's able to just determine whether or not people are telling the truth or not, and at trial, he thought that the defendant was lying. But what I would also like to say is so when he brings him out of the plane, he is, of course, placed in handcuffs. He's got the border, got a remote gate where he could have run out onto the runway, and the district court found that the concern of him running out onto the runway and officer safety and passenger safety when hundreds of people are walking right by him was a good reason to handcuff him. Within that period of time, they spoke to numerous flight attendants. They spoke to the victim. Are you saying there was probable cause? When do you say there was probable cause to arrest him? I think that there was probable cause. I think there's an argument that there's probable cause as soon as the plane. There's always an argument. Yes. When does the government assert there was probable cause? I think the government in our brief, we said that there could have been probable cause at the time that the purser came out and identified the two people because at that point you have the pilot's statement and you have the purser's statement. Okay. But what I will say is what the district court found, which was that certainly there was probable cause by the time that they moved the defendant to Tom Bradley. At that point, numerous witnesses had been talked to, and the government would submit there was surely probable cause at that point. But even if we found there was no probable cause at that point, the government isn't relying on any of the information obtained during that time. So instead, his next step was through customs and border protection. When was he arrested? The district court found that at the earliest, it didn't make an actual finding, but at the earliest he was arrested when he was transported to Tom Bradley. I'm not sure if he was even arrested at that point because at that point he's still just making his way through customs. He doesn't have absolute rights as he's going through customs. And as the district court found below, they have every right to search his bag and find that note. And upon the finding of that note, I think there's absolutely probable cause to arrest him. And then the last thing I'll just address is quickly the Miranda issue. This is clear, I think, in the briefs, but the defendant never said he didn't understand any of the specific rights. His only possible confusion was whether or not or why the rights were being read to him at all. And I would submit that that doesn't show that he doesn't understand the rights. And as for any issue of voluntariness, he testified at trial that the reason he spoke with them is because he wanted to collaborate and be helpful with the FBI, not that he was coerced in any way. And that's after a long time of talking to counsel and figuring out exactly what he should say for voluntariness. Unless the court has any other questions, the government is prepared to submit. Thank you. Thank you. Your Honor, just briefly with respect to the requirement of the statute, the Bergere case, of course, was dealing with interpreting 2242-2. There it found that the knowingly applied not just to the fact that the defendant knew he was engaging in a sexual act with the alleged victim, but also that it applied to later in the statute, knew the alleged victim was either incapable of appraising the nature of the conduct or physically incapable of declining participation in or communicating unwillingness to engage in that sexual act. Counsel, is this also a question of first impression? This is an issue of first impression, yes, Your Honor. It is, whether or not knowledge should apply to both causes. Correct, Your Honor. Yes. Certainly with respect to this particular statute, the Bergere decision at least deals with a provision in the Sexual Abuse Act of 1986. So it's dealing with the same act, but a different provision of the act. But there is not a published decision at the circuit court level, certainly not in this circuit, that addresses this particular statute and the knowledge requirement. So, Your Honor, we believe the Bergere decision very clearly, easily applies to this context. The same reasoning applies to this context and is the reasoning that this Court should adopt in terms of interpreting the statute. In terms of the issue of the arrest, perhaps I wasn't, I may not have been clear before. There was other stuff happening before the touching between A.M. and Mr. Price. They had engaged in drinks together. They had conversation together. There was more than just all of a sudden she awoke and he was touching her. They, in fact, had been engaging in what appeared to be a relationship, a brief relationship. But what I don't understand is why didn't the instruction on permission solve this problem? Because the jury found that it had to necessarily find that there was no implied permission which would cover all of these other circumstantial pieces of evidence. Well, it goes to what the jury was told is all they had to find was whether he had that other person's permission. And she said he didn't have my permission. And so clearly the jury was permitted, based solely on her testimony, to make that finding. Now, he then tried to do the best he could, given the jury instructions that were given, to say, look, I thought it was consensual, but without ‑‑ Did he explain why he wrote the note telling her after the fact that she could always say no? Yes, because, again, he thought that clearly this was a misunderstanding because he thought that this was a consensual act that the two of them were engaging in. Right, and the jury rejected that. Well, yes, the jury clearly rejected that based on the jury instructions that were given where they did not have to make a determination as to whether he knew he lacked consent. They were permitted to convict him based solely on her testimony, without regard to whether or not he knew he lacked the consent to begin with. You know, the fact is the jury wasn't told, if he believed it was consensual, that that was a legitimate basis for finding him not guilty. They were told essentially the opposite, that they could convict him solely on her statement that I didn't consent. And that's why we have a problem with those jury instructions. Unless the Court has any additional questions. Thank you, Your Honor.
judges: Gilman, Reinhardt, Wardlaw